## In the Matter of The CENTRAL RAILROAD COMPANY OF NEW JERSÉY.

### Action No. B 67–401.

United States District Court,
D. New Jersey.

July 18, 1983.

See also, D.C., 477 F.Supp. 1228.

---

Stanley Weiss, Carpenter, Bennett & Morrissey, Newark, N.J., for Central Jersey Industries.

Bernard Chazen, Weiner, Ostrager, Fieldman & Zucker, Rochelle Park, N.J., for claimants.

## OPINION

CLARKSON S. FISHER, Chief Judge.

On March 22, 1967, the Central Railroad Company of New Jersey ("CNJ") filed for reorganization under § 77 of the former Bankruptcy Act. Thereafter it operated under federal trusteeship until consummation of its plan of reorganization on September 14, 1979. On April 1, 1976, Consolidated Rail Corporation ("Conrail") acquired virtually all of the CNJ rail system pursuant to the Regional Rail Reorganization Act of 1973, as amended, 45 U.S.C. § 701 *et seq.* Robert D. Timpany ("Timpany") served as trustee from early 1971 until consummation.

Order No. 965, "Order in Aid of Consummation of the Amended Plan of Reorganization of the Central Railroad Company of New Jersey," was filed on September 13, 1979. It discharged the debtor and the trustee from:

all obligations, debts, liabilities and claims against the Debtor, whether or not filed or presented, whether or not approved, acknowledged or allowed in these proceedings and whether or not provable in bankruptcy, including without limitation all claims assumed or guaranteed by the Debtor or enforceable against the property of the Debtor ...,

except to the extent provided by the reorganization plan. It provided for the transfer to the reorganized company of all of the assets and property of the estate of the debtor:

free and clear of all claims, rights, demands, interests, liens and encumbrances of every kind and character, whether or not properly or timely filed and whether or not approved, acknowledged or allowed in these proceedings, of the Debtor, its creditors, claimants and stockholders ....

It also provided that:

All persons, firms, governmental entities and corporations, wherever situated, located or domiciled, are hereby *permanently* restrained and enjoined from instituting, prosecuting or pursuing, or attempting to institute, prosecute or pursue any suits or proceedings, except such suits or proceedings as may be for the purpose of carrying out this Order or Order 964 or consummating the Plan, at law or in equity or otherwise, against the Reorganized Company or its successors or assigns or against any of the assets or property of the Reorganized Company or its successors or assigns, directly or indirectly, on account of or based upon any right, claim or interest of any kind or nature whatsoever which any person, firm, governmental entity or corporation may have in, to or against the Debtor, the Trustee of the property of the Debtor or any of his assets or properties, and

from interfering with, attaching, garnishing, levying upon, enforcing liens against or upon, or in any manner whatsoever disturbing, any portion of the property, real, personal, or mixed, of any kind or character, on or at any time after the Consummation Date in the possession of the Reorganized Company and from interfering with or taking steps to interfere with the Reorganized Company, its officers and agents, or the operation of the properties or the conduct of the business of the Reorganized Company, by reason of or on account of any obligation or obligations incurred by the Debtor or any of its Trustees in these proceedings, except the obligations imposed on the Reorganized Company by the Plan and this Order. All persons, firms, governmental entities and corporations, wherever situated, located or domiciled, are hereby restrained and enjoined from instituting, prosecuting or pursuing or attempting to institute, prosecute or pursue any suit or proceedings, at law or in equity or otherwise, against the Debtor or any of its assets or property, directly or indirectly. (emphasis supplied).

The Court retained jurisdiction to consider and take appropriate action with respect to the foregoing provision and to take such action and enter such orders as might be necessary to carry out the plan of reorganization, the order in aid of consummation, and all other orders relative thereto. The estate was closed effective as of the consummation date.

On July 29, 1982, Frank Wooten ("Wooten") filed a complaint in the Superior Court of New Jersey, pursuant to the Federal Employer's Liability Act, against CNJ, Timpany, Conrail, and Central Jersey Industries Inc. ("CJI"), the reorganized company seeking recovery for alleged injuries and diseases contracted during his employment by CNJ and Timpany. On December 29, 1982, a similar action was commenced in the Superior Court of New Jersey by Raymond Mansfield ("Mansfield"), the Estate of Raymond Mansfield, and Mary Mansfield.[1] The plaintiffs in these cases have alleged that their claims did not arise until after the date of the consummation order because they did not discover their injuries until after that date.[2]

CJI moved in state court to dismiss the Wooten complaint for lack of subject matter jurisdiction but its motion was denied. At the same time, Wooten moved before this Court to reopen Order No. 965 to permit him to proceed against CJI. That motion was later withdrawn. CJI now petitions this Court, on behalf of itself, CNJ, and Timpany, for an order (1) declaring that the claims against them by the state court plaintiffs arising out of the employment of Wooten and Mansfield by CNJ and Timpany are discharged; (2) permanently enjoining plaintiffs from prosecuting their state court actions with respect to CNJ, Timpany, and CJI; and (3) adjudging plaintiffs in contempt of Order No. 965 unless they dismiss their actions as to CNJ, Timpany, and CJI within ten (10) days.

■ The question raised by the instant matter is whether this Court's order discharging the debtor and the trustee and enjoining any suits against the reorganized company based upon claims against the debtor and the trustee, can act to bar claims for injuries that had not yet been discovered at the time of consummation. That question must be answered in the affirmative.

The authority for the Court's order is found in § 77 of the former Bankruptcy Act dealing with the reorganization of railroads in interstate commerce. This statute provides, *inter alia*, that upon confirmation, a plan of reorganization shall be binding upon all creditors whether or not their

---

**1.** This action also names as defendants several shipyards that had employed Mansfield and several manufacturers of cigarettes smoked by him.

**2.** While the Mansfield complaint contains an allegation as to the date of discovery, the Wooten complaint does not. The only such allegation is in Wooten's brief. For purposes of the present action, I will assume the accuracy of his allegations.

claims shall have been filed; that the property dealt with by the plan be transferred free and clear of all claims of creditors; that the debtor be discharged from its debts and liabilities; and that upon termination of the proceedings a final decree shall be entered discharging the trustee, making such provisions as may be equitable, by way of injunction or otherwise, and closing the case. Former 11 U.S.C. § 205(f). The term "creditors" includes "all holders of claims of whatever character against the debtor or its property whether or not such claims would otherwise constitute provable claims under [the former Bankruptcy] Act...." Former 11 U.S.C. § 205(b). The term "claims" is defined very broadly and includes "debts, whether liquidated or unliquidated, securities ..., liens, or other interests of whatever character," *Id.*, and "all claims of whatever character against the debtor ... whether ... fixed or contingent," former Bankruptcy Rule 8–701(g).

Section 77 "reflects a public policy that the operation of railroads as sound economic units should be achieved for the benefit of the public regardless of the interest of creditors and stockholders.... To this end, any reorganization plan ... should be drastic enough to assure the continued solvency of the enterprise...." 5 Collier on Bankruptcy (14th Ed.) ¶ 77.02[1]. The broad scope of the statute's definitions facilitates this policy and must be held to encompass the claims presented by these state court plaintiffs.

■ The main purpose of § 77 is the rehabilitation of the debtor railroad rather than the liquidation of its assets. *Connecticut Ry. and Lighting Co. v. Palmer*, 305 U.S. 493, 501, 59 S.Ct. 316, 322, 83 L.Ed. 309 (1939); *Van Schaick v. McCarthy*, 116 F.2d 987, 992–93 (10th Cir.1941); *In re Penn Central Transportation Co.*, 458 F.Supp. 1234, 1246 (E.D.Pa.1978). The real worth of a railroad, both monetarily and with respect to the public interest, lies in its value as a going concern. The value of its assets, if sold piecemeal, would be negligible. Congress regarded reorganization as

the most feasible solution for a railroad that became insolvent or unable to meet its debts as they matured. *Van Schaik, supra* at 992; *see also, In re Penn Central, supra* at 1246.

■ A plan of reorganization must design a capital structure such that the fixed charges are brought within the probable future earnings of the reorganized company. *Van Schaik, supra* at 992; *In re Penn Central, supra* at 1247. In order for this to be accomplished, there must be a determination, prior to consummation, of the assets and liabilities of the estate and of the obligations and burdens that the reorganized company will be expected to bear. In the present case, the capital structure of CJI was based upon certain assumptions as to what burdens it could reasonably bear. Interests in the company and certain of its assets were distributed accordingly. The original capitalization of CJI, the allocation of its securities, and the public trading in those securities have all reflected the outcome of the reorganization proceedings, including the termination of liabilities not taken into account prior to the closing of the estate. Allowance of the claims asserted here and those that would likely follow in the future, would have a substantial impact upon the reorganized company. Furthermore, to permit the estate to be reopened each time a new claim is discovered would preclude any finality to the reorganization proceeding.

The purpose of the reorganization provisions could not be realized if the discharge of the debtor were not complete and absolute. If third parties could not rely on the finality of the plan of reorganization, they would be reluctant to invest in or deal with the reorganized company. *See Duryee v. Erie R. Co.*, 175 F.2d 58, 63 (6th Cir.), *cert. denied*, 338 U.S. 861, 70 S.Ct. 103, 94 L.Ed. 527 (1949).

For the above reasons, I hold that Order No. 965 discharged CNJ and Timpany from the claims presented by the Wooten and Mansfield plaintiffs. It also bars those plaintiffs from proceeding against CJI

based upon claims against CNJ and Timpany.

It is well settled that a court of bankruptcy may enjoin prosecution of an action in state court in order to enforce or protect its decree. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Evans v. Dearborn Machinery Movers Co.,* 200 F.2d 125 (6th Cir.1953); *Mar-Tex Realization Corp. v. Wolfson,* 145 F.2d 360 (2d Cir.1944). I therefore grant CJI's petition for declaratory and injunctive relief. Attorney for CJI shall submit an appropriate order within five (5) days.