**In re EMMER BROTHERS COMPANY, Debtor.**

**F & M MARQUETTE NATIONAL BANK, Plaintiff,**

v.

**EMMER BROTHERS COMPANY, Defendant.**

Bankruptcy No. 4–82–957.

Adv. 4–84–213.

Civ. No. 4–85–679.

United States District Court, D. Minnesota, Fourth Division.

July 18, 1985.

J. Patrick McDavitt, Briggs & Morgan, Minneapolis, Mn., for plaintiff.

Scott A. Johnson, Robins, Zelle, Larson & Kaplan, Minneapolis, Mn., for defendant.

James H. Levy, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Mn., for Committee of Unsecured Creditors.

Paul J. Scheerer, Dorsey & Whitney, Minneapolis, Mn., for First Trust of Montana.

McLAUGHLIN, District Judge.

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's appeal from the March 29, 1985 Order of the bankruptcy court granting defendant debtor's motion to dismiss. The Order of the bankruptcy court will be reversed and the case will be remanded for further proceedings.

## FACTS

The plaintiff-appellant in this case is F & M Marquette National Bank (Marquette). The defendant-appellee debtor is Emmer Brothers Company, a wholesale lumber company which has been in business for a number of years. Marquette has been the debtor's primary source of financing during much of that time, and has loaned substantial sums to the debtor pursuant to loan and security agreements. On May 25, 1982, three of debtor's trade creditors instituted an involuntary bankruptcy proceeding against the debtor. On June 14, 1982, the debtor converted this involuntary Chapter 7 filing into a voluntary Chapter 11 case.

Debtor owed Marquette $1.2 million at the time of the involuntary bankruptcy filing. It had outstanding debts to its trade creditors at that time of $1.7 million. The loans extended by Marquette were secured by a security interest in substantially all of debtor's assets, including accounts receivable, inventory, equipment, contracts, general intangibles, and a mortgage on real property in Yellowstone County, Montana. Marquette had also obtained the personal guaranties of the debtor's principal shareholders.

On August 27, 1983, Marquette and the debtor entered into a settlement agreement for the purpose of "resolving Brothers' indebtedness to Bank expeditiously to avoid unnecessary delay in litigation and to maximize recovery of all other creditors' claims under Brothers' anticipated plan of reorganization ...." Settlement Agreement at 3. The settlement agreement provided that the debtor would immediately transfer certain of its assets to Marquette in full satisfaction of its indebtedness, and that Marquette would in turn relinquish its security interest in all other of debtor's assets, and limit its recourse against the debtor's personal guarantors. Section 2(a) of the agreement states: "Subject to the conditions and contingencies set forth in Section 6 below, Bank [Marquette] agrees to accept the following assets of Brothers [Debtor] *in full and complete settlement and satisfaction of all Obligations* of Brothers to bank ...." (Emphasis added.) Section 2(c) of the settlement agreement states that all the assets which the debtor transferred to Marquette shall be "free and clear of any liens and encumbrances save those running in favor of Bank." Section 2(c) also states: "Bank shall release its security interests in all other Brothers collateral in Bank's possession or subject to

any lien or other claim by Bank ... and shall release and withdraw all claims ... it has or may have against Brothers in its bankruptcy case, whether or not the case remains in Chapter 11 or is converted to Chapter 7."

The bankruptcy court approved the above settlement agreement on September 15, 1982. The debtor filed its third amended Chapter 11 plan of reorganization on July 14, 1983, which provided for a resolution of the unsecured creditors' claims. On September 12, 1983, the bankruptcy court approved this plan, which states, in part:

> Upon confirmation of the Plan, all liens, encumbrances, and security interests upon or against the property of the Debtor ... shall be terminated, discharged, voided, and released .... Subject to the exception contained in this Plan, the Debtor shall thereafter own and be possessed of all of its property and assets, free and clear of any such liens, encumbrances, and security interests not excepted herein.

Article XII, subparagraph 2.

On November 19, 1984, Marquette commenced the instant adversary proceeding in the bankruptcy court, alleging causes of action in misrepresentation, mutual mistake, and unjust enrichment, and seeking damages or rescission of the settlement agreement which it had entered into with the debtor.[1] The gist of Marquette's suit is that the debtor wrongfully withheld and concealed the existence of an asset from Marquette and the bankruptcy court, thereby obtaining the settlement agreement and the order approving it by false pretenses.[2] The asset in question is an interest in a class action plywood antitrust suit entitled *In re Plywood Antitrust Litigation,* M.D.L. No. 159 (E.D.La.). This suit was brought on behalf of lumber dealers against plywood manufacturers for recov-

ery of excess freight charges, and relates to the time period from 1968 to 1973. The debtor is apparently a member of the plaintiff class, but did not include the existence of the suit in its bankruptcy schedules or otherwise disclose this information to Marquette or any of its other creditors. Neither the plan of reorganization nor the disclosure statement accompanying the plan made any mention of the litigation. Marquette alleges that it was not aware of the debtor's interest in the suit until a few weeks prior to the date it commenced the instant action.

There is some dispute over the exact state of mind which the debtor had with respect to the above lawsuit. In 1977 or 1978, the class was certified and the debtor was notified by a form letter. The debtor claims that its records proving transactions with lumber suppliers during the period from 1968 to 1973 had been destroyed, and that it therefore discarded the letter and made no attempt to assert a claim or otherwise participate in the litigation. Marquette argues that since the debtor knew of the lawsuit's existence at the time of the bankruptcy proceeding, it should have disclosed it as an asset. Debtor's response is that it had simply forgotten about the litigation.

During the spring or summer of 1984, the federal district court supervising the Plywood Litigation decided to allow class members who had not previously asserted claims against the defendants, and who had no business records for the appropriate time period, to recover damages based upon a reconstruction of the defendants' own records. Accordingly, the debtor learned in June of 1984 that it would receive a dividend from the litigation despite the fact that it had not filed a claim. The debtor's recovery from this suit is expected to be from $300,000 to $500,000.

---

1. The debtor, contending that Marquette's suit constitutes a flagrant violation of several provisions of the Bankruptcy Code, counterclaimed against Marquette for contempt of court and requested an award of attorneys' fees. The bankruptcy court has yet to rule on this counterclaim.

2. The Unsecured Creditors' Committee moved to intervene in Marquette's suit pursuant to Fed.R. Civ.P. 24(a)(2) and 11 U.S.C. § 1109(b).

On January 11, 1985, the defendant debtor moved to dismiss Marquette's complaint or for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12, as incorporated in Rule 7012 of the Bankruptcy Rules. The bankruptcy court entered an Order on March 29, 1985 dismissing Marquette's complaint.[3] There were basically two grounds for the bankruptcy court's decision to dismiss Marquette's complaint. First, the court found that Marquette's suit was an attempt to revoke the order confirming debtor's plan of reorganization based on fraud, and that it was therefore barred by the 180 day limitation period set forth in 11 U.S.C. § 1144, since it was commenced more than one year after the confirmation. The court did not elaborate on why it considered Marquette's suit to recover an asset not disclosed at the time of the plan's confirmation as an attempt to revoke the plan, although it did make the following comments:

[Marquette's] theory would prevent an orderly and fair determination of the rights of all parties in some cases. If selected creditors were allowed to bring an action to claim undisclosed assets, the whole theory of the bankruptcy system would be subverted. A Debtor in a chapter 11 proceeding is to propose a plan for *all* creditors. That process requires negotiation with many diverse interests and often times requires compromises reached only because creditors are aware that a sufficient number of creditors must accept the plan or the bankruptcy court must be able to confirm it despite objections. What a creditor is willing to accept depends upon the pool of available assets, among other considerations. The only way to treat all creditors fairly in light of an undisclosed asset is to again allow all creditors to negotiate freely with debtor and accept or reject a plan on that basis. If Marquette alone is allowed to reach the asset which was undisclosed in this case, that process is subverted.

Order at 7–8.

The second ground for the court's decision was that the confirmation order discharged all of debtor's debts, including the suit by Marquette, under 11 U.S.C. § 1141(d)(1). The court found that since the settlement agreement was signed approximately one year before the confirmation order, Marquette's claim for fraud arose before confirmation. Accordingly, Marquette's suit was a "debt that arose before the date of ... confirmation" and therefore discharged by the confirmation order under 11 U.S.C. § 1141(d)(1). The court rejected Marquette's theory that its claim was not discharged by confirmation because the undisclosed asset was not property "dealt with by the plan" as set forth in section 1141(c). The court reasoned that the debtor's plan of reorganization in this case dealt with all of debtor's property, including undisclosed assets, citing the following section of the plan:

Upon confirmation of the Plan, all liens, encumbrances, and security interests upon or against the property of the Debtor ... shall be terminated, discharged, voided, and released.... Subject to the exception contained in this Plan, the Debtor shall thereafter own and be possessed of all of its property and assets, free and clear of any such liens, encumbrances, and security interests not excepted herein. .

Article XII, subparagraph 2(a).

In addition to sections 1141 and 1144 of the Bankruptcy Code, and the debtor's own reorganization plan, the bankruptcy court pointed to the "need for certainty and finality in bankruptcy proceedings." Order at 7. A rule which would allow lawsuits regarding undisclosed assets years after the confirmation of a plan, according to the court, would be contrary to the policy of granting debtors a fresh start. While the court recognized that there was a need to guard against fraud on the part of debtors, it held that section 1144 of the Code struck the appropriate balance between these con-

---

**3.** The court also denied the motion to intervene which had been brought by the Unsecured Creditors' Committee.

flicting policies by allowing for a six month period during which a plan could be revoked.

On April 5, 1985, Marquette filed a timely notice of appeal from the bankruptcy court's order dismissing its action. The Committee of Unsecured Creditors filed a notice of appeal on April 11, 1985; the committee supports Marquette's appeal and seeks the reinstatement of its motion to intervene before the bankruptcy court. On May 17, 1985, pursuant to a motion by Marquette under Bankruptcy Rule 8005, the bankruptcy court issued an order restraining the debtor from disbursing, transferring, or making any other use or disposition of any proceeds it receives from the class action suit, pending final disposition of Marquette's appeal.

## DISCUSSION

■ The bankruptcy court in this case dismissed Marquette's complaint on debtor's Rule 12(c) (BR 7012(b)) motion. The court therefore accepted as true Marquette's allegations of fraud, but ruled that its claim was barred as a matter of law. Since the bankruptcy court's decision rested purely on questions of law, the appropriate standard of review on appeal is de novo. *Matter of Newcomb*, 744 F.2d 621, 625 (8th Cir.1984). Under the de novo standard, the Court "must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge." *Matter of Hammons*, 614 F.2d 399, 403 (5th Cir.1980).

■ An order confirming a Chapter 11 plan or reorganization is the controlling order in a bankruptcy case and has the same legal effect and significance as a federal district court judgment. *In re Astroglass Boat Co., Inc.*, 32 B.R. 538 (Bankr. M.D.Tenn.1983). Upon entry of the confirmation order, the reorganization plan is binding upon both the debtor and all creditors, regardless of whether they have accepted the plan. Section 1141 of the Bankruptcy Code provides, in part:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, *the provisions of a confirmed plan bind* the debt-

or, any entity issuing securities under the plan, any entity acquiring property under the plan, and *any creditor,* equity security holder, or general partner in, the debtor, *whether or not the claim or interest of such creditor,* equity security holder, or general partner *is impaired under the plan and whether or not such creditor,* equity security holder, or general partner *has accepted the plan.*

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, *after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors,* equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141 (emphasis added). Section 1141 also provides that the order confirming the reorganization plan "discharges the debtor from any debt that arose before the date of such confirmation," unless otherwise provided in the Bankruptcy Code or in the order confirming the plan. *Id.* § 1141(d)(1)(A). Under the Code, a "debt" means "liability on a claim," *id.* § 101(11), and a "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* § 101(4).

A confirmation order may be set aside under only a limited set of circumstances, and within a limited time period. A motion to set aside a confirmation order must be based upon a claim that the order was procured through fraud, and such motion must be made within 180 days of the entry of such order. 11 U.S.C. § 1144. The 180 day time limit in section 1144 of the Code and its counterpart in predecessor statutes has been strictly enforced by the courts.

*See, e.g., Matter of Newport Harbor Assoc.,* 589 F.2d 20 (1st Cir.1978).

### A. The 180 day limitations period of section 1144

As the Court has noted, section 1144 of the Bankruptcy Code allows a party to move to revoke the order confirming a Chapter 11 reorganization plan, on the ground that it was procured by fraud, within 180 days of the order. The Bankruptcy Rules provide that this time limit cannot be enlarged. BR 9006(b)(2); 9024. Courts have consistently held that the explicit requirements of section 1144 must be adhered to. *E.g., In re Errington,* 39 B.R. 968 (Bankr.D.Minn.1984). The six month statute of limitations provided for in section 1144 and in predecessor or analogous statutes has been strictly enforced even in those cases where the alleged fraud of the debtor is not discovered until after the limitations period. *Matter of Penn Cent. Transp. Co.,* 42 B.R. 657 (E.D.Pa.1984); *Matter of Newport Harbor Assoc.,* 589 F.2d 20 (1st Cir.1978); *Matter of Medical Analytics, Inc.,* 410 F.Supp. 922 (S.D.N.Y. 1975), *affirmed,* 532 F.2d 879 (2d Cir.1976) (per curiam). If Marquette's action for fraud is construed as an attempt to revoke the confirmation order, then, it must be held to be barred by the limitations period in section 1144.

Marquette does not attempt to enlarge the time period prescribed in section 1144. Rather, it contends that the bankruptcy court mischaracterized the nature of its complaint in holding that it is an attempt to revoke the order confirming the debtor's plan of reorganization. Marquette points out that it was never a participant in the plan, that it had no interest in the plan, and that the undisclosed asset which it seeks to recover was never a part of the plan. Marquette argues that its lawsuit does not seek revocation of the debtor's reorganization plan, but rather embodies independent causes of action, so that section 1144 is irrelevant.

The debtor argues that Marquette's suit is an impermissible collateral attack on the final order confirming the reorganization plan, and that it should therefore be subject to the requirements of section 1144.[4] Marquette's suit, according to the debtor, is an attempt to revive pre-confirmation claims based on loan indebtedness and fraud, despite the fact that the confirmation order and plan discharged the debtor from all claims. The debtor cites three cases in which courts have held that creditors may not attack confirmation orders by simply characterizing the attempt as an independent cause of action rather than a motion to revoke the order. *Miller v. Meinhard-Commercial Corp.,* 462 F.2d 358 (5th Cir.1972); *In re Garsal Realty, Inc.,* 39 B.R. 991 (N.D.N.Y.1984); *In re Astroglass Boat Co., Inc.,* 32 B.R. 538 (Bankr.M. D.Tenn.1983). Finally, the debtor points to the need for finality in bankruptcy actions and argues that a rule allowing common law suits to recover pre-confirmation debts would cause chaos in the bankruptcy courts. The potential of such suits, according to the debtor, would deter future creditors from investing in the reorganized entity, *citing Matter of Cent. R. Co. of New Jersey,* 38 B.R. 686, 689 (D.N.J.1983).

The Court has determined that the complaint which Marquette filed in the bankruptcy court is not an attempt to revoke or otherwise collaterally attack the confirmation order that is subject to the limitations period of section 1144.[5] To be-

---

**4.** In *Mitchell v. Village Creek Drainage District,* 158 F.2d 475, 478 (8th Cir.1946), the Eighth Circuit held that when the overruling of a final judgment may be important or in any way necessary to the success of an action, the action must be considered a collateral attack on the judgment, even if it has an "independent purpose" or contemplates relief other than collateral attack. *See also Burlington Data Processing, Inc. v. Automated Medical Systems, Inc.,* 492

F.Supp. 821, 822 (D.Vt.1980) (collateral attack is "attempt to avoid, defeat, or evade a judicial decree or to deny its force and effect").

**5.** The decisions cited by the debtor are readily distinguishable from the instant case. In *Garsal Realty,* the plaintiff debtor sought an extension of a time limit for exercising a purchase option on a mortgage which was specified in the plan. Such an action clearly represents an attempt to

gin with, none of the cases cited by the bankruptcy court in support of its reading of section 1144 involved claims against assets undisclosed by the debtor during the course of the bankruptcy proceeding. Second, two of the cases cited by the court recognized that the 180 day deadline in section 1144 does not act as a bar to independent causes of action based on a debtor's wrongful conduct. In *Matter of Newport Harbor Assoc.*, the First Circuit dismissed a motion to revoke confirmation on the ground that it was not filed within the 180 day period mandated by the predecessor to section 1144, but made the following comments:

> Our opinion should not be read to suggest that the Debtors or other creditors who may have been injured by fraud are necessarily without other remedies in other forums. *Cf. Bizzell v. Hemingway*, (4 Cir.1977), 548 F.2d 505, indicating that an action for damages or other relief, based on the federal securities laws or common law theories, may be available in the federal or state courts. It would appear that the doctrines of res judicata and collateral estoppel would not bar such an action, at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement.

589 F.2d at 24. *See also Matter of Medical Analytics, Inc.*, 410 F.Supp. at 923.

An application of the "test" set forth in *Matter of Newport Harbor Assoc.* strongly suggests that Marquette's suit should be allowed to proceed. Since the debtor's interest in the plywood litigation was not disclosed until well after the confirmation order, Marquette could not have asserted the fraud in the Chapter 11 proceeding. Likewise, since the asset was undisclosed, the confirmation order did not deal with it, so it cannot be said that there was an adjudication with respect to this asset. Finally, and most importantly, the relief sought by Marquette's complaint would not upset the confirmed plan of arrangement. A judgment in favor of Marquette with respect to the $300,000 to $500,000 that the debtor will receive from the antitrust litigation would not affect the distributions previously made to the creditors under the plan nor the debtor's reorganization. This case does not involve an attempt to "redivide the pie" by a disgruntled participant in the plan. Rather, it involves a dispute about an additional asset that did not figure in to the reorganization plan. The Court finds that an adjudication of this dispute would not upset the confirmed plan,[6] and that the 180 day time limitation of section 1144 is therefore not a bar to Marquette's suit.

**B. Discharge under section 1141**

Section 1141(c) of the Bankruptcy Code provides that "after confirmation of a plan, *the property dealt with by the plan* is free and clear of all claims and interests of creditors ...." (Emphasis added.) Marquette argues that the adversary action which it filed in the bankruptcy court is not barred by this section because the asset in question was never disclosed during the

---

modify or revoke a plan. The same is true of *In re Astroglass,* in which a creditor filed a motion seeking an allowance of a claim and damages directly inconsistent with the provisions of the confirmed plan.

*Miller v. Meinhard-Commercial Corp.* is also distinguishable. In *Meinhard,* an unsecured creditor brought an action against a secured creditor for alleged fraudulent representations at a creditors meeting which induced it to acquiesce in a Chapter 11 proceeding rather than a Chapter 10 proceeding. The unsecured creditor further alleged that it would have been able to collect a greater percentage of its claims in a Chapter 10 proceeding. The suit in *Meinhard*

did not involve undisclosed assets, as in the instant case. Moreover, the plaintiff unsecured creditor in *Meinhard* knew of the alleged fraud before confirmation, but inexplicably waited until after confirmation to bring its actions. Finally, an action which alleges that the bankruptcy case should have proceeded under Chapter 10 rather than Chapter 11 is clearly in conflict with the Chapter 11 confirmation order.

**6.** Even if the Committee of Unsecured Creditors, who participated in the plan, were allowed to intervene in Marquette's suit, the litigation over the undisclosed asset would have no effect on the plan.

bankruptcy proceedings, nor was it listed or otherwise referred to in the reorganization plan. Marquette supports its argument by first pointing to the plain language rule of statutory construction. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *In re Sims Bros. Builders, Inc.*, 35 B.R. 149, 151 (Bankr.S.D.Ohio 1983). The plain meaning of "property dealt with by the plan," according to Marquette, is property administered or listed in the plan as either assets intended to be utilized in implementing the plan or assets to be reserved by the debtor following plan implementation. Under this definition, according to Marquette, the debtor's interest in the plywood litigation would not be property "dealt with" by the plan.

Marquette's primary support for its argument that undisclosed assets are not "dealt with" by the plan, and therefore not discharged under section 1141, is the Ninth Circuit's decision in *Stein v. United Artists Corp.*, 691 F.2d 885 (9th Cir.1982). This decision is the only one cited by the parties which discusses the problem of concealed or undisclosed assets in a bankruptcy proceeding. In *Stein*, a debtor corporation failed to disclose an antitrust cause of action as one of its assets during a Chapter 11 proceeding. After the confirmation of its reorganization plan, the debtor assigned its cause of action to its principal shareholder, who then commenced a lawsuit. The defendants in this suit moved to dismiss on the grounds that since the debtor failed to disclose the antitrust claim as one of its assets in the Chapter 11 proceeding, the claim did not revest in the debtor upon plan confirmation and could therefore not be assigned to the plaintiff. The Ninth Circuit affirmed the trial court's dismissal of the action, holding that undisclosed assets were not "dealt with" in the plan, and therefore did not become vested in the debtor upon confirmation. The case arose under the old Bankruptcy Act, which provided in section 110(i) that upon confirmation of a plan "the title to the property dealt with shall revest in the ... debtor."

The Ninth Circuit's decision in *Stein* was premised primarily on the fiduciary duties owed by a debtor-in-possession in a Chapter 11 proceeding:

> The debtor in possession is strictly supervised by the bankruptcy court, and his actions, including abandonment, must be approved. The bankrupt does not act in his own interests until he reverts to his former status upon discharge and confirmation of the plan. The extent of the fiduciary duties should not vary with the identity of the one who performs that role.
>
> The dangers resulting from the concealment of assets are greater when the debtor remains in possession than in cases in which a third party acts as trustee. An outside trustee is a separate mechanism for discovering unlisted claims or assets. If a debtor in possession were permitted to omit claims in bankruptcy and later assert title to them, there might be an inducement to do so, to the prejudice of creditors' interests. Such a rule would undermine the fiduciary status of the debtor in possession.

691 F.2d at 892. The above rationale prompted the Ninth Circuit to find that its holding applied whether or not the failure to list the asset was intentional, since "the opportunity for concealment must be considered in formulating the proper general rule." *Id.*

In attempting to distinguish the decision in *Stein*, the bankruptcy court correctly pointed to the fact that it was a case decided under the old Bankruptcy Act; whereas under the Act the confirmation of a plan vests property dealt with in the plan in the debtor, under the new Code confirmation vests *all* of the property in the estate in the debtor. 11 U.S.C. § 1141(b). A second difference between *Stein* and the instant case is that *Stein* dealt with the question of whether a debtor's assignee had title to a claim so as to be able to bring suit, rather than the sensitive question of whether a creditor who is subject to the confirmed plan can assert a post-confirmation claim against the reorganized debtor. The latter issue obviously implicates a policy concern which the former does not: the necessity for finality in bankruptcy proceedings so that debtors may have a fresh start.

Marquette's argument that *Stein* is "on all fours" to the case at bar, then, is somewhat overstated. Nevertheless, the policy rationale in *Stein* is a strong reason to hold that assets not disclosed by debtors-in-possession are not "property dealt with by the plan" under section 1141(c) and are therefore subject to claims such as Marquette's.[7] The debtor-in-possession does have a fiduciary responsibility to the bankruptcy court and its creditors. 11 U.S.C. § 1107(a) (debtor-in-possession has same duties as trustee in Chapter 7 proceeding); *United States v. Turner*, 725 F.2d 1154, 1158 (8th Cir.1984) ("concurrent with the power to run the business is the duty to act responsibly toward creditors"). A debtor who fraudulently conceals an asset during the course of the bankruptcy proceedings surely violates this duty.[8] A rule which would bar suits for fraud to recover such undisclosed assets would clearly encourage debtors to hide their assets. The Court therefore finds that the debtor's interest in the class action suit is not property dealt with by the confirmation plan, so as to bar Marquette's suit under section 1141(c).

The final issue in this case is whether Marquette's claim is a debt which arose before the date of the confirmation plan, so as to be discharged under section 1141(d) of the Code. Marquette correctly points out that under both Minnesota and federal law, claims for fraud are deemed to arise when the fraud is discovered by the injured party, and not when it takes place. *City of Coon Rapids v. Suburban Engineering, Inc.*, 283 Minn. 151, 167 N.W.2d 493 (1969); *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946). In bankruptcy cases, the court is to follow the applicable state law with respect to the question of when a common law cause of action is deemed to arise. *See, e.g., Matter of UNR Industries, Inc.*, 29 B.R. 741, 745 (D.C.N.D.Ill. 1983), *appeal dism.*, 725 F.2d 1111 (7th

Cir.1984). The bankruptcy court's conclusion that the fraud claim arose before the confirmation of the plan is erroneous, since it rests solely on the fact that the settlement agreement between Marquette and the debtor was entered into prior to confirmation. There is no dispute, however, that Marquette first became aware of the debtor's interest in the plywood litigation well after the confirmation of the plan. Section 1141(d)(1)(A) therefore poses no bar to Marquette's suit. This is certainly the fairest result, and at least one court has implied that traditional statute of limitations rules of equitable tolling should apply to suits which seek damages for fraud rather than revocation of a confirmed plan. *Matter of Medical Analytics, Inc.*, 410 F.Supp. at 923.

The bankruptcy court's holding is not entirely without support. Several courts have held that confirmation of the reorganization plan discharges all claims, even those which are not discovered until after the confirmation plan and which are traditionally subject to equitable tolling principles. *See Matter of Penn Cent. Transportation Co.*, 42 B.R. 657 (E.D.Pa. 1984); *Matter of Cent. R. Co. of New Jersey*, 38 B.R. 686 (D.N.J.1983); *Schweitzer v. Consolidated Rail Corp.*, 36 B.R. 469 (E.D.Pa.1984). The stringent rule of these cases is based primarily on the bankruptcy policy of finality. While this policy is a serious consideration which should not be lightly disregarded, the Court has concluded that the discharge provisions of the Code should not operate as a bar to Marquette's suit. The claims raised by Marquette go to the integrity of the bankruptcy proceeding itself, and also raise serious policy concerns. While the general rule is that all claims are discharged by confirmation, even if the claim is not discovered until some later date, an exception is appropriate in the fairly narrow category of cases in which the debtor has engaged in

---

7. The bankruptcy court's determination that the undisclosed asset was "dealt with" by the plan because the plan provided that the debtor would own all of its property and assets free of any claims is unpersuasive.

8. The debtor argues that its failure to disclose the plywood litigation was an innocent oversight rather than fraud. This raises a factual issue that is not appropriately considered on review of a decision on a motion to dismiss. The Court must assume for the purposes of this appeal that the debtor acted fraudulently.

misconduct during the bankruptcy proceeding and in which the claim would not involve revocation or modification of the reorganization plan. The instant case falls into that category, and Marquette should therefore be allowed to litigate its allegations of fraud.

Based on the foregoing, **IT IS OR-DERED** that the March 29, 1985 order of the bankruptcy court is reversed and the instant action is remanded to the bankruptcy court for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Committee of Unsecured Creditors' motion to intervene in the adversary proceeding before the bankruptcy court is reinstated.