In re Gerald James BOWEN, Debtor.

Gerald James BOWEN, Plaintiff,

v.

RESIDENTIAL FINANCIAL CORP., a
New Jersey corporation, Defendant.

Bankruptcy No. 3–85–1958.
Adv. No. 3–87–157.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Aug. 17, 1988.

Steven B. Nosek and Kathryn A. Page, Wagner, Johnston & Falconer, Ltd., Minneapolis, Minn., for plaintiff.

Robert H. Torgerson (Steven H. Snyder, on the brief), Luther, Ballenthin & Carruthers, Minneapolis, Minn., for defendant.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR STAY OF FURTHER PROCEEDINGS IN ADVERSARY PROCEEDING

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on March 15, 1988, upon Plaintiff's motion for partial summary judgment and Defendant's motion for a stay of proceedings pending the completion of certain state-court litigation involving Plaintiff and Defendant.[1] Plaintiff appeared by his attorneys, Steven B. Nosek and Kathryn A. Page. Defendant appeared by its attorney, Robert H. Torgerson (Steven H. Snyder, on the brief). Upon the moving and responsive documents, the other files and records in this adversary proceeding, and the relevant pleadings and proceedings in Plaintiff's Chapter 11 case, the Court grants Plaintiff's motion for summary judgment on the issue of liability and denies Defendant's motion for a stay of all further proceedings in this adversary proceeding.

Plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 26, 1985. The case was duly assigned to former Chief Judge John J. Connelly of this Court. Plaintiff scheduled Defendant (at its Edina, Minnesota office) as a secured creditor on his Schedule A–2, noting that Defendant held mortgages against two condominium units which Plaintiff then owned, located in a Ramsey County, Minnesota, development known as "Regency Condominiums at Shepard Park." Plaintiff included Defendant on the mailing matrix filed in connection with the case. Defendant does not deny receiving the various notices issued by the office of the clerk of this Court during the course of the case.

At some point after Plaintiff's grant of the mortgage to Defendant, Defendant assigned its interest in the mortgages and

---

1. The Court also heard Defendant's motion for abstention, which is being treated in a separate

Report and Recommendation to the District Court pursuant to BANKR.R. 5011(b).

underlying promissory notes to Shadow Lawn Savings and Loan Association ("Shadow Lawn"). On January 7, 1986, Shadow Lawn filed a proof of claim asserting the status of a secured creditor holding a mortgage against the two condominium units securing a debt in the outstanding balance of $191,549.48. On February 25, 1986, Shadow Lawn filed a motion for relief from stay in Plaintiff's Chapter 11 case. Plaintiff and Shadow Lawn subsequently stipulated to a grant of relief from stay to allow Plaintiff to deed the condominium units to Shadow Lawn in lieu of foreclosure of its mortgages. Judge Connelly approved the stipulation and granted relief from stay to Shadow Lawn pursuant to its terms via an Order filed on March 13, 1986. Defendant does not deny that Plaintiff fully consummated the stipulation by executing the deeds-in-lieu thereafter.

In the spring of 1986, Plaintiff formulated, modified, and ultimately disseminated a plan of reorganization; the final version was filed on June 3, 1986. The plan classified Defendant's and Shadow Lawn's claims as unimpaired under Class 29, noted the "full and final settlement of all [their] claims" via the tender of the deeds-in-lieu, and provided for no further distribution to them. By an Order entered on June 3, 1986, Judge Connelly confirmed the plan. The clerk of this Court serviced a notice of confirmation and Chapter 11 discharge on all matrix creditors, including Defendant.

On June 19, 1987, Defendant served Plaintiff with a summons and complaint in a lawsuit venued in Minnesota State District Court for the Fourth Judicial District, Hennepin County. Defendant (as plaintiff in state court)[2] brought the lawsuit against several corporate entities and individuals who had developed the Regency Condomin-

iums project, and Plaintiff and several other individuals who had purchased Regency units as investments using financing from Defendant. In its original and amended complaints,[3] Defendant alleged that the named state-court defendants had committed fraud under common-law and statutory deceptive-practices theories, in the individual defendants' application for financing; that, in extending credit, Defendant had relied on various fraudulent representations as to the purchasers' creditworthiness and their ability and intent to service the mortgage debt on the condominium purchases, the amount of the down-payment investments which the purchase agreement required purchasers to make, and after closing, the amount of the down payments which were represented to have been actually made at closing; and that the purchasers failed after closing to make payments on the loans, forcing Defendant to foreclose its mortgages and, presumably, to conduct later distress sales of the condominium units. Plaintiff prayed for an award of damages based on the foreclosure expenses it incurred, its lost profits, and its loss of part of the value of the units.

In his complaint in this adversary proceeding, Plaintiff alleges that Defendant's action in commencing and prosecuting the Hennepin County District Court litigation as against him was and is a willful violation of the "discharge injunction" arising under 11 U.S.C. §§ 1141(d)(1)(A) and 524(a)(2). He seeks a contempt finding premised upon an adjudication of that violation, imposition of sanctions, and injunctive relief against Plaintiff's further prosecution of the Hennepin County District Court litigation. In its answer, Defendant raises nine specific defenses:

---

2. Apparently Shadow Lawn reserved a right of recourse against Defendant as a condition of receiving the assignment of the note and mortgage, and then exercised it.

3. Defendant's counsel neglected to append a copy of the state-court complaint to the answer in this adversary proceeding. In response to the Court's request at hearing for a copy of the complaint, Defendant's counsel forwarded copies of the original complaint, an amended com-

plaint, and a statement of facts from a memorandum filed in the action. Plaintiff's counsel then objected to the Court receiving anything but the original complaint, arguing that the other pleadings exceeded the scope of the Court's request. The amended complaint fairly falls within the scope of the request. The memorandum does not; it has not been taken as part of the record, nor has it been read and considered in connection with the motions at bar.

1. failure to state a claim upon which relief can be granted;

2. denial of several essential elements of Plaintiff's cause of action;

3. lack of contempt power in the Bankruptcy Court;

4. various (time-worn) equitable defenses of estoppel, waiver and unclean hands;

5. exception of the debt sued upon in the state-court action from Plaintiff's Chapter 11 discharge, by operation of 11 U.S.C. § 523(a)(3)(B);

6. deprivation (by some unspecified past, present, or future process) of Defendant's property without due process of law;

7. the existence of grounds for reconsideration of this Court's Order confirming Plaintiff's Chapter 11 plan and/or that plan's treatment of Defendant's claims against Plaintiff;

8. the existence of grounds for abstention under 28 U.S.C. § 1334(c), in favor of litigation of issues raised in this adversary proceeding in the Hennepin County District Court action;

9. existence of grounds for relief from the discharge injunction under 11 U.S.C. § 524(c).

Plaintiff now moves for summary judgment pursuant to FED.R.CIV.P. 56(c), *made applicable to this adversary proceeding by* BANKR.R. 7056. Under that rule, a grant of summary judgment is mandatory when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. As the sole factual basis for his prayer for relief in this adversary proceeding, Plaintiff relies upon the established sequence of various proceedings, entry of court orders, and service of various pleadings, notices, and orders in his Chapter 11 case, as estab-

lished by the contents of this Court's files and docket for that case, and Defendant's later commencement and prosecution of the Hennepin County District Court litigation. As framed by Plaintiff's complaint, the threshold legal issues in this adversary proceeding are whether Defendant's asserted fraud and deceptive-practices claims against Plaintiff were discharged by the confirmation of Plaintiff's Chapter 11 plan, and whether Defendant proceeded to sue out those claims after being put on notice of the discharge. All of Defendant's pleaded substantive defenses go, directly or indirectly, to those issues. The significant defenses—specifically, the § 523(a)(3)(B) dischargeability issue and its related request for abstention; the two requests for relief from the discharge injunction; the Fifth Amendment defense; and the denial of contempt power in the Bankruptcy Court—join purely legal issues, if one assumes that Plaintiff has elicited all of the relevant facts.

Both parties have had ample time for discovery, here and in Hennepin County District Court. Notwithstanding that, Defendant has failed to demonstrate the existence of a genuine issue of material fact as to any of the events which form the factual basis of Plaintiff's prayer for relief, by affidavit on personal knowledge, discovery response, or any other probative form prescribed by FED.R.CIV.P. 56(e).[4] It was Defendant's affirmative obligation to do so, to forestall the Court from addressing the legal merits of Plaintiff's claims by demonstrating the existence of a triable fact issue of material fact going to the issues of discharge and contempt joined by Plaintiff's complaint. Plaintiff therefore has met the threshold requirement on his motion.

---

**4.** Throughout a rambling supplemental memorandum, verified only by counsel, Defendant's counsel repeatedly and summarily accuses Plaintiff of engaging in "inequitable and furtive conduct" during the course of his Chapter 11 case, up to Defendant's alleged discovery of the basis for the Hennepin County District Court litigation. Counsel does not even suggest the evidentiary basis for the accusations. Such invective is not a basis sufficient to resist the conclusion that there is no genuine issue of material fact; the party opposing summary judgment must make a "response, by affidavits or ... otherwise ..., [setting] forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *In re Anderson,* 72 B.R. 783, 789 (Bankr.D.Minn.1987).

■ Though not completely articulated as such, Defendant's argument opposing summary judgment rests mainly on two legal theories by which it asserts that its fraud claims were not discharged: first, that bringing its fraud claims within the scope of the discharge would deny it of property rights without due process of law; and, second, that the fashion in which Plaintiff scheduled Defendant's claim, in conjunction with Defendant's alleged inability to discover the basis for the fraud claim at an earlier date, mean that that claim was excepted from discharge by operation of 11 U.S.C. § 523(a)(3)(B).[5] These arguments also join issues of law alone, as Defendant has not asserted any underlying facts which Plaintiff controverts.

While not controlling authority, the case of *In re Penn Central Transportation Co.*, 771 F.2d 762 (3d Cir.1985), is directly on point as to all of the discharge issues joined by Plaintiff's complaint—and it fully supports the conclusion that Defendant's asserted fraud claims were discharged by the confirmation of Plaintiff's Chapter 11 plan.[6] In *Penn Central*, the Third Circuit affirmed the District Court's holding that the Chapter XI discharge granted to the bankrupt on the consummation date in its reorganization case discharged subsequently-discovered antitrust and conspiracy claims asserted by several scheduled creditors and, in the absence of evidence that the reorganized debtor had fraudulently concealed the bases for the antitrust claims during the pendency of the Chapter XI case, neither the Fifth Amendment nor FED.R.CIV.P. 60(b)(3) and (6) applied so as to allow the antitrust claimants to pursue their causes of action against the reorganized bankrupt.

In all material respects, the scenario here is identical to that presented in *Penn Central*. Here, as in *Penn Central*, the asserted fraud claims arose pre-petition. Thus, notwithstanding Defendant's delay in uncovering the alleged fraud, and notwithstanding the possibility that some portion of the alleged damage accrued post-petition, Plaintiff's alleged liability under Defendant's causes of action still constituted "debts" for the purposes of Plaintiff's bankruptcy case. *See* 11 U.S.C. §§ 101(11) (defining "debt" as "liability on a claim") and 101(4)(A) (defining "claim" as "right to payment," whether "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, [or] undisputed ...". Plaintiff scheduled Defendant as a secured creditor. As a scheduled creditor-claimant included on the case mailing matrix, Defendant received full notice of all proceedings during the case. Its assignee and successor-in-interest actively participated in pre-confirmation proceedings for the enforcement of the security rights created under the original mortgage granted by Plaintiff to Defendant. Plaintiff has denied Defendant's summarily-pled allegations of fraudulent concealment; Defendant has produced no external evidence to support those allegations. Here, as in *Penn Central*, the overarching policy of the applicable bankruptcy law favors the according of finality to the debt structure of a reorganized debtor. *See, e.g., In re Emmer Bros. Co.*, 52 B.R. 385, 394 (D.Minn.1985) (noting "the general rule ... that all claims are discharged by confirmation, even if the claim is not discovered until some later date ..."); *In re Ernst*, 45 B.R. 700, 702 (Bankr.D.Minn.1985) (recognizing that a Chapter 11 plan "is essentially a new and binding contract, sanctioned by

---

**5.** As to the latter point, Defendant requests alternative relief of either a finding of nondischargeability, or a deferral of that finding pending the fixing and liquidation of the state-law fraud cause of action in Hennepin County District Court. Apparently Defendant proposes to litigate in state court to qualify the debt as one specified under 11 U.S.C. § 523(a)(2), before this Court would determine the other elements of § 523(a)(3)(B). The proposal ignores the prospect that a state-court fraud determination would *not* have preclusive effect upon a return

to this Court. *See Schwartz v. Renville Farmers Co-op Credit Union*, 44 B.R. 266, 268–69 (D.Minn. 1984).

**6.** *Penn Central* arose out of a railroad reorganization case under Section 77 of the Bankruptcy Act of 1898, former 11 U.S.C. § 205 (repealed 1978). All of the statutory and policy bases for the Third Circuit's decision have direct analogs under the Bankruptcy Code and, therefore, *Penn Central* is still good law in a Code case.

the Court, between a debtor and his preconfirmation creditors ...").

Confirmation of a Chapter 11 plan "discharges the debtor from any debt that arose before the date of such confirmation ..." 11 U.S.C. § 1141(d)(1)(A). It is clear, then, that Defendant's claims were subject to discharge by the June 3, 1986 confirmation order. *See Penn Central,* 771 F.2d at 766.

■■■ Defendant's assertion of the discharge exception under 11 U.S.C. § 523(a)(3)(B) is unavailing. The discharge exception under § 523(a)(3) "is designed to remedy the harm to creditors that results from not being able to participate in the bankruptcy case." *In re Anderson,* 72 B.R. at 786 (citations omitted). By imposing the more severe sanction of exception from discharge—and, hence, survival of the debt in full—it is designed to protect the right of a creditor to file a proof of claim (and, in turn to receive a share of the assets of the bankruptcy estate based upon that claim), to seek an earlier determination that its debt is excepted from discharge under 11 U.S.C. §§ 523(a)(2), (a)(4), or (a)(6), or both. *Id. See also* H.R.REP. No. 595, 95th Cong., 1st Sess. 364 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 78–9 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. By its plain terms, however, it is designed to protect only the creditor who is completely absent from the debtor's schedules, and who does not receive actual notice of the bankruptcy case. It is not structured or intended as a punitive measure to preserve all pre-petition money obligations which a debtor may not schedule to the penny, or as to which a debtor may not describe the factual and legal basis with Holmesian accuracy and conciseness. It is not intended as a safe haven for creditors with actual knowledge of a pending bankruptcy case who neglect to promptly evaluate and advance their interests in the case. Rather, it is intended to act in organic conjunction with numerous other provisions of the Bankruptcy Code and Rules, which operate on the understanding that debtors and creditors in bankruptcy cases have independent obligations to safeguard their own interests in anticipation of the grant of discharge in bankruptcy. The debtor has an absolute duty to identify and schedule all persons or entities who may hold or assert claims against the bankruptcy estate and, hence, to afford adequate notice to creditor-claimants of the effect of the case on their rights. *In re Lorenzen,* 21 B.R. 129, 131 (Bankr.N.D.Ohio 1982). Once the debtor has done this, or once an unscheduled creditor has received actual notice of the pendency of a bankruptcy case, the creditor-claimant has the clear obligation to take affirmative steps to evaluate, advance, and protect its rights.

Here, Plaintiff duly and accurately scheduled Defendant as a secured creditor. Defendant received its full opportunity to participate in Plaintiff's Chapter 11 case; its assignee then prosecuted proceedings to protect its rights to its security. Thereafter, Defendant and its assignee declined to further participate in the case. To be sure, Plaintiff did not schedule Defendant's claim as one arising in part as a result of his own fraudulent conduct. He denies that Defendant has any such fraud claim. It was not incumbent on him to schedule the claim as such, merely as a hedge against any § 523(a)(3) nondischargeability complaint which might have been raised under the unusual circumstances presented here. *Compare Penn Central,* 771 F.2d at 768 (noting that "nothing in section 77 [of the Bankruptcy Act] requires trustees [or, as here, debtors in possession] to provide information to creditors as to the character of their claims ..."). Defendant simply is not an obligee under a debt "neither listed nor scheduled" within the meaning of § 523(a)(3); clearly, Defendant's asserted fraud claim was not excepted from discharge by operation of that statute. *In re Pellegrino,* 42 B.R. 129, 131 at n. 2 (Bankr. D.Conn.1984) (debt arising under different legal cause of action from that noted by debtor in schedules was not excepted from discharge by § 523(a)(3), where debtor correctly scheduled creditor's name and address, creditor received all notices in case,

and creditor participated in case).[7]

Penn Central also readily disposes of Defendant's Fifth Amendment due process argument, under a similar rationale. In the bankruptcy reorganization context "[t]he purpose of the [due process] notice requirement is to advise individuals who will be affected by the outcome of any proceeding ... so that they can take steps to safeguard their interests [citations omitted].... The notice requirement is not necessarily intended to advise them of the nature of those interests." *Penn Central,* 771 F.2d at 768. As in *Penn Central,* the creditor here received the Notice of Chapter 11 Case issued by the clerk's office, advising it of its right to file a proof of claim and the bar date for filing it. The creditor's assignee then participated in the case, presumably based upon the creditor's and its assignee's strategic evaluation of their rights. Finally, the creditor did not seek adjudication from this Court as to the effect of Plaintiff's Chapter 11 discharge on its claims until long after Plaintiff consummated his reorganization. Defendant has failed to produce any evidence that Plaintiff was aware of the basis for Defendant's fraud claim before Defendant sued him in Hennepin County District Court, or that Plaintiff took any action to fraudulently conceal his alleged wrongdoing from Defendant. As in *Penn Central,* this Court is left to conclude that, for the purposes of the confirmation proceedings in Plaintiff's Chapter 11 case, Defendant "received all the notice that [it was] due under the Constitution." 771 F.2d at 769.

Finally, the record is devoid of any evidence of fraudulent concealment by Plaintiff that may support a grant to Defendant of relief from the Plaintiff's Chapter 11 discharge for its fraud claims, whether cast under FED.R.CIV.P. 60 or under more general equitable principles. To support a request for such extraordinary relief, it was incumbent on Defendant to produce some evidence (ideally in the form of an admission by Plaintiff, or the statement of another witness with actual knowledge) that Plaintiff knew of the basis for Defendant's claims before confirmation of his plan, and before Defendant uncovered that basis; that he then concealed them from Defendant and its assignee; and that he deliberately failed to specify the claims in his bankruptcy schedules. Defendant has had more than ample time to generate evidence of this sort and has not done so; instead, it has relied upon summary accusations in counsel's argument. Its failure to do so has the same ultimate effect as the admission of the creditors in *Penn Central* that the bankrupt railroad's trustees were unaware of the existence of the fraud claims and the alleged conspiracy to conceal in that case.[8] A grant of equitable relief as extraordinary as requested here—striking as it does, directly at the finality of consummated reorganization under Chapter 11—cannot be based on mere suspicion, or accusation without tangible

---

7. As a result, this Court has recommended to the District Court that Defendant's motion for abstention be denied. Defendant seeks abstention from the federal courts for the purpose of fixing and liquidating its state-law claim against Plaintiff. This might be appropriate, so long as the proof establishing Plaintiff's alleged fraud under state law also met the federal test and standards for dischargeability under 11 U.S.C. § 523(a)(2). *See Schwartz v. Renville Farmers Co-op Credit Union,* 44 B.R. 268-69 (noting that Minnesota state law may allow recovery on a fraud claim on proof less stringent than that required under federal dischargeability law). However, the entire inquiry as to whether the debt was one properly categorized under § 523(a)(2) is mooted by the conclusion that § 523(a)(3) is inapplicable because Plaintiff *did* schedule Defendant as a creditor.

8. Defendant's failure to produce *any* evidence of fraudulent concealment distinguishes this case from *In re Emmer Bros. Co., supra.* The Bankruptcy Court in *Emmer Bros.* made its ruling in the context of the debtor's motion for dismissal of the creditor's complaint under FED.R.CIV.P. 12(b)(6), and necessarily accepted the creditor's allegation of fraud as true. 52 B.R. at 390. The present matter is presented in a motion for summary judgment—where, under recent decisions of the U.S. Supreme Court, the *nonmoving* party has an affirmative obligation to present evidence establishing any challenged element of its case on which it will bear the burden of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–4, 106 S.Ct. 2548, 2552–3, 91 L.Ed. 2d 265 (1986).

support. Because Defendant failed to carry its burden on these issues, it is not entitled to any sort of relief from the discharge injunction and may not resist Plaintiff's summary judgment motion on the basis of that asserted entitlement.[9] *See Penn Central*, 771 F.2d at 769–72.

 All of Defendant's pleaded legal defenses are unavailing. Plaintiff's alleged debts to Defendant, arising out of Defendant's asserted fraud causes of action against Plaintiff, were discharged by the confirmation of Plaintiff's Chapter 11 plan. Defendant was bound by the terms of that plan. 11 U.S.C. § 1141(a); *In re Emmer Bros. Co.*, 52 B.R. at 390. Defendant received notice of the confirmation of Plaintiff's plan; it then was bound by the "discharge injunction" of 11 U.S.C. §§ 1141(d) and 524(a)(2), and was restrained and enjoined from taking any action to assert any pre-confirmation claim against Plaintiff, including its fraud claims. Because it was on notice of the confirmation and the discharge injunction, and is deemed to be on notice of their effect, and

because it intentionally proceeded to enforce a debt subjected to the Chapter 11 discharge, it perforce follows that it knowingly and willfully proceeded to violate that injunction when it commenced its litigation. As a result, it was in contempt of this Court. *See Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 (8th Cir.1987).[10] Plaintiff is entitled to judgment in his favor, determining that his Chapter 11 discharge discharged Defendant's asserted fraud claims, and finding Defendant in civil contempt of this Court for attempting to enforce those claims via the Hennepin County District Court litigation. The structure of an appropriate sanction for Defendant's contempt, in the form of damages compensating Plaintiff for the infringement on his established rights under the confirmation order, may be addressed in further proceedings.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That Defendant's asserted claims against Plaintiff for fraud and deceptive practices, as set forth in an amended com-

---

9. This all assumes that Defendant's request for Rule 60 relief from the discharge order is not time-barred by virtue of Defendant's failure to make it until it served and filed its Answer and Counter–Claim in September, 1987—which it probably is. *See* BANKR.R. 9024.

10. In its answer, Defendant asserted that "the plaintiff's alleged action must fail because the United States Bankruptcy Court for the District of Minnesota does not have contempt power." Defendant's counsel did not raise this defense in brief or argument in responding to Plaintiff's motion, though it requires some treatment. The distinction between criminal and civil contempt stems from "the character of the relief" and "the nature and purpose of the punishment" which the movant seeks the Court to impose on the contemnor. *Hicks v. Feiock*, —— U.S. ——, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988); *Hubbard*, 810 F.2d at 781. The present proceeding, one which seeks monetary relief to compensate Plaintiff for Defendant's past disobedience of the discharge injunction and equitable relief restraining future infractions, is one for an adjudication of civil contempt. *Hubbard*, 810 F.2d at 781–82. Some courts have held that Congress did not grant civil contempt power to bankruptcy judges under the jurisdictional scheme of the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See, e.g., In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987). The

more well-reasoned rule—and the conclusion more conducive to judicial economy and the notion and function of the Bankruptcy Court as a specialized adjudicatory body charged with fully controlling and administering its role in the cases under its jurisdiction—is that the "allwrits" provisions of 11 U.S.C. § 105 confers full civil contempt power on bankruptcy judges, at least in "core proceedings" within the meaning of 28 U.S.C. § 157(b). *See, e.g., Yaquinto v. Greer*, 81 B.R. 870, 880–81 (N.D.Texas 1988); *Kellogg v. Chester*, 71 B.R. 36, 38–39 (N.D.Texas 1987); *Better Homes of Va., Inc. v. Budget Service Co.*, 52 B.R. 426, 428–30 (E.D.Va.1985), *aff'd on other grounds*, 804 F.2d 289 (4th Cir.1986); *In re Kennedy*, 80 B.R. 673 (Bankr.D.Del.1987); *In re Edgehill Nursing Home, Inc.*, 68 B.R. 413, 415 (Bankr.E.D.Pa.1986); *In re Haddad*, 68 B.R. 944, 947–49 (Bankr.D.Mass.1987); *In re Shafer*, 63 B.R. 194, 197–98 (Bankr.D.Kan.1986); *In re L.H. & A. Realty, Inc.*, 62 B.R. 910, 913–14 (Bankr.D.Vt.1986); *In re McCary*, 60 B.R. 152, 154 (Bankr.N.D.Ill.1986); *In re Gaslight Club, Inc.*, 54 B.R. 252, 253 (Bankr.N.D.Ill.1985). As a proceeding to effectuate Plaintiff's discharge, the fundamental bankruptcy remedy adjusting the debtor-creditor relationship, this adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(O). This Court clearly has the power to enter a final order adjudicating the contempt issue here, subject to the limitations of BANKR.R. 9020(c).

plaint filed in a lawsuit presently pending in Minnesota State District Court for the Fourth Judicial District, Hennepin County, under the caption of *Residential Financial Corp., Plaintiff, v. Shepard Park Development Corp., et al.,* court file no. MC 87–1105, were discharged by this Court's order of June 3, 1986, confirming Plaintiff's Chapter 11 plan of reorganization.

2. That, in commencing and prosecuting the lawsuit in Hennepin County District Court as against Plaintiff, Defendant was in civil contempt of this Court's confirmation order and the discharge injunction of 11 U.S.C. §§ 1141(d)(1)(A) and 524(a)(2).

3. That Defendant is henceforth restrained and enjoined from litigating, only as against Plaintiff, the Hennepin County District Court action described in Term 1 of this order, or from taking any other action to compel Plaintiff's payment on or satisfaction of any of the fraud or deceptive-practices claims asserted in the amended complaint in that lawsuit.

4. That Defendant's motion for a stay of all further proceedings in this adversary proceeding is denied.

5. That, within 20 days of the date of this order, Plaintiff's counsel shall serve and file an affidavit by Plaintiff setting forth a specific accounting for all of the elements of monetary damages which he alleges he has suffered as a consequence of Defendant's contempt adjudged in this order. If Defendant files a written objection in nature and/or amount to any or all elements of those damages, the Court shall thereafter set this adversary proceeding back on for evidentiary hearing to determine the amount of damages to which Plaintiff is entitled as a consequence of Defendant's contempt. If Defendant does not file such a written objection, the Court shall thereafter enter a money judgment in favor of Plaintiff against Defendant for the amount of monetary damages set forth in Plaintiff's affidavit.

LET JUDGMENT BE ENTERED IN ACCORDANCE WITH TERMS 1 THROUGH 3 OF THIS ORDER.