**In the Matter of BARCHRIS CONSTRUC-
TION CORPORATION, Debtor.**

United States District Court
S. D. New York.

Oct. 25, 1963.

Supplemental Memorandum
Nov. 7, 1963.

McLanahan, Merritt & Ingraham, New York City, for petitioners, Emanuel Becker, New York City, of counsel.

Richard V. Bandler, New York City, for Securities and Exchange Commission, Martin Mushkin, and Joseph P. Sullivan, New York City, of counsel.

Krause, Hirsch, Gross & Heilpern, New York City, for debtor.

Alex L. Rosen, New York City, for Receiver, Marvin N. Rosen.

Leinwand, Grossman, Maron & Hendler, New York City, for Creditors' Committee.

Davies, Hardy & Schenck, New York City, for Trustee under the Trust Indenture.

HERLANDS, District Judge.

On October 29, 1962, BarChris Construction Corporation, the debtor, filed a petition for an arrangement under Section 322 of Chapter XI of the Bankruptcy Act, 11 U.S.C. § 722.

Subsequently, eight of its subsidiaries or subsidiaries of subsidiaries filed Chapter XI petitions with this Court. All of

the debtors were adjudicated bankrupt on March 19, 1963. On May 16, 1963, a receiver (Marvin Rosen, Esq.) was appointed for the debtors after the adjudication was vacated by consent of the parties. The proceedings of BarChris and its subsidiaries were consolidated on July 30, 1963.

On August 16, 1963, two debenture holders of the debtor (holding $366,000 in 5½% convertible subordinated debentures) moved (pursuant to Section 328 of the Bankruptcy Act, 11 U.S.C. § 728) to dismiss the Chapter XI petition unless, within a period to be fixed by this Court, the debtor's petition shall have been amended to comply with the requirements of Chapter X for the filing of a debtor's petition.

The motion is supported by the Securities and Exchange Commission; it is opposed by the debtor and official creditors committee.

■ In resolving the issues presented herein, the Court exercises its "sound discretion" and "business" judgment. General Stores Corp. v. Shlensky, 350 U.S. 462, 467, 468, 76 S.Ct. 516, 100 L.Ed. 550 (1956); Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 456, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); In re Lea Fabrics, Inc., 272 F.2d 769, 772 (3d Cir. 1959), judgment vacated, Securities and Exchange Commission v. Lea Fabrics, 363 U.S. 417, 80 S.Ct. 1258, 4 L.Ed.2d 1515 (1960); Securities and Exchange Commission v. Liberty Baking Corp., 240 F.2d 511 (2d Cir.), cert. denied, 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 723 (1957).

■ The discretion so to be exercised "must be a legal discretion, rather than one merely at will" or one expressing the court's "own notions of equitable principles." Securities and Exchange Commission v. United States Realty & Improvement Co., supra, at 457 of 310 U.S., at 1054 of 60 S.Ct., 84 L.Ed. 1293

"Discretion that is premised on the wrong criteria or that disregards

well-settled principles is said to transcend 'the allowable bounds' and is reversible."

In re Herold Radio & Electronics Corp., 191 F.Supp. 780 (S.D.N.Y.1961), citing General Stores Corp. v. Shlensky, supra, at 468 of 350 U.S., at 520 of 76 S.Ct., 100 L.Ed. 550; Securities and Exchange Commission v. Liberty Baking Corp., supra, at 516 n. 10 of 240 F.2d.

The crucial consideration in choosing between Chapter X and Chapter XI is "the needs to be served." General Stores Corp. v. Shlensky, supra, at 466 of 350 U.S., at 519 of 76 S.Ct., 100 L.Ed. 550. The resolution of that issue necessarily hinges "on the facts of the case whether the formulation of a plan under the control of the debtor, as provided by c. XI, or the formulation of a plan under the auspices of disinterested trustees, as assured by c. X and the other protective provisions of that chapter, would better serve 'the public and private interests concerned including those of the debtor.' [Securities and Exchange Commission v. United States Realty Co., 310 U.S. 434], at 455 [60 S.Ct. 1044, 84 L.Ed. 1293, 1940]." General Stores Corp. v. Shlensky, supra, at 465 of 350 U.S., at 518 of 76 S.Ct., 100 L.Ed. 550.

We turn now to a consideration of the material facts.

The debtor was incorporated in the State of New York in 1955 to renovate and construct bowling centers and to manufacture and supply related equipment. From 1955 to 1962, it constructed approximately 70 centers. Payment for the centers generally took the form of cash and a series of secured notes which in turn were negotiated to various lending institutions in order to provide debtor with working capital.

Debtor's financial difficulties stem from a recession in the bowling business commencing in 1961. As the bowling business declined, many of the operators of bowling centers defaulted on their secured notes, thereby forcing the debtor to repossess and run the centers. In addition, the debtor was forced to complete

for its own account seven centers when prospective purchasers failed to honor their commitments.

The debtor's principal business was bowling center construction, not operation. It is now not engaged in any construction and has lost all of its employees engaged in such work.

On July 9, 1963 a proposed amended plan of arrangement was mailed to creditors. The arrangement provides, in relevant part, that the debtor is to consolidate or merge with either a corporation called Leisureland, U.S.A., Inc. (hereinafter "Leisureland") or one of its subsidiaries. The consolidation is to be effected by the issuance of stock and subordinated debentures of the debtor.

The proposal also calls for payment to unsecured creditors (including debenture holders) of a total of 15% of their claims over a period of 4 years and 3 months from confirmation, each debt to be evidenced by a non-negotiable 4% note. This is subject to a provision for adjustment in the event that the total amount of claims exceeds $5,250,000. The total payment to unsecured creditors is not to exceed $800,000.

The plan further provides that Leisureland will pay the fees of the creditors' and bondholders' committee and its attorneys as well as the trustee in bankruptcy and his attorney. The debtor is to pay other legal fees and assume performance of all agreements with secured creditors not disaffirmed.

The debtor has outstanding the following three issues of securities:

| | |
|---|---|
| 5½% convertible subordinated debentures: | $3,440,000 |
| $.50 par common stock: | 1,247,976 shares |
| Common stock warrants exercisable @ $3.00 until October 31, 1964: | 19,500 shares |

These securities are all held by members of the investing public except that persons (Christie Vitolo, president, and Lebario Pugliese, vice-president) associated in the management of the debtor hold approximately 42% of the common stock and about $70,000 in debentures. The stock is pledged to secure their guarantees of certain of the debtor's obligations.

There are approximately 2,773 holders of the common stock, which is listed on the American Stock Exchange. Trading was suspended by the Exchange when the debtor was adjudicated.

The debentures are in bearer form and were part of an original $3,500,000 sold to the public in May 1961. Drexel & Co. was the principal underwriter. The debentures have been declared in default by the Indenture Trustee. Seventeen thousand five hundred of the warrants are held by Peter Morgan & Co., which received them as part of its compensation as the underwriter in December 1959 of the common stock issue of BarChris.

### Balance Sheet

The audited balance sheet of the debtor as of October 29, 1962 is as follows:

Assets

Current Assets

| | | |
|---|---|---:|
| Cash | $ | 3,072.04 |
| Accounts and Notes Receivable | | 258,574.01 |
| Notes Receivable—Secured | | 212,611.24 |
| Inventories (Amount submitted by Management) | | 448,842.16 |
| Total Current Assets | $ | 923,099.45 |

### Deferred Charges & Other Assets

| | |
|---|---|
| Cash value of Insurance on Life of Officers (Contra) | $    73,603.00 |
| Investment in Subsidiaries and Affiliates | 550,266.00 |
| Excess of Notes Receivable Pledged over Secured Liabilities to Banks and Factors | 2,864,596.06 |
| Accounts Receivable—Shoppers Bowling Lanes Ltd. | 78,472.68 |
| Mortgage Receivable—Rose Crete Realty Corp. | 15,322.00 |
| Fixed Assets—Less Depreciation | 88,519.26 |
| Due from Subsidiaries and Affiliates | 1,914,874.36 |
| Investment in Lanes and Equipment (Contra) | 1,594,030.11 |
| Pre-paid Insurance | 25,487.53 |
| Deposit—Arcade Sunshine Corp. | 14,749.98 |
| Deposits—Utilities and Others | 19,821.70 |
| Due from A.M.F. Pinspotters Co. | 24,600.00 |
| Due from Employees | 9,169.13 |
| **Total Assets** | **$8,196,611.26** |

## Liabilities and Stockholders' Equity

### Secured Liabilities

| | |
|---|---|
| Conditional Sales Contracts | $      1,848.38 |
| Notes Payable—Credit Industrial Corp.— Secured by Chattel Mortgage on Lanes and Equipment (Contra) | 225,000.00 |

### Liabilities Having Priority

| | |
|---|---|
| Taxes Payable | $   150,794.50 |
| Wages Payable | 805.76 |

### Loans Payable—Insurance Companies

| | |
|---|---|
| | $    68,144.88 |

### General Liabilities

| | |
|---|---|
| Accounts and Notes Payable | $1,169,379.74 |
| Due to First National Bank | 11,153.29 |
| Due to Executives | 324,894.46 |
| Customers' Deposits Payable | 39,000.00 |
| Accounts Receivable—Credit Balance | 15,563.32 |
| Due to Employees | 10,642.76 |
| 5½% Subordinated Debenture Bonds Payable | 3,500,000.00 |
| Interest on Bonds Payable | 96,250.02 |
| **Total Liabilities** | **$5,613,447.11** |

### Stockholders' Equity

| | |
|---|---|
| Capital Stock | $   624,488.50 |
| Paid-In Surplus | 1,765,659.05 |
| Surplus—Jan. 1, 1962—Adjusted | 994,552.99 |
| Loss—Jan. 1, 1962–Oct. 29, 1962 | (   801,566.39) |
| **Stockholders' Equity** | **$2,583,134.15** |
| **Total Liabilities and Stockholders' Equity** | **$8,196,611.26** |

## Comments on Some Balance Sheet Items

(a) The balance sheet does not reflect debts secured by notes. These secured debts total $4,298,328.60 and are secured by notes with a face value of $7,162,924.66. The difference between the two figures is shown as an "asset".

(b) The statement of total assets is not significant since among the assets are the following items:

| | |
|---|---|
| Investments in subsidiaries and affiliates | $ 555,266.00 |
| Due from subsidiaries and affiliates | 1,914,874.36 |
| Excess of notes receivable over secured liabilities [explained in (a) above] | 2,864,596.06 |
| Total | 5,329,736.42 |

The accountant's report shows that many of the subsidiaries of the debtor are in Chapter XI.

## Debtor's Earnings Record

The consolidated earnings history of the debtor and its predecessors since 1957, as reported is:

| Year Ended December 31 | Net Sales* | Net Earnings (Loss)** |
|---|---|---|
| 1957 | $1,475,650 | $ 41,398 |
| 1958 | 1,952,237 | 164,321 |
| 1959 | 3,494,722 | 168,087 |
| 1960 | 9,352,410 | 878,735 |
| 1961 | 5,217,370 | (154,640) |
| Jan. 1, 1962 to Oct. 29, 1962*** | 1,360,678 | (801,566) |

* Includes pro-rata portions of contracts in progress based on approximate percentages of completion at the end of the periods 1959–1961.
** Before special items.
*** Unaudited and unconsolidated.

———◆———

The gist of the contentions submitted by the applicants and the Securities and Exchange Commission is that (1) debtor's management has engaged in questionable conduct which should be thoroughly probed in a detailed investigation; (2) creditors will not be able to collect even the 15% offered due to the financial instability of Leisureland; (3) the arrangement calls for no sacrifice on the part of stockolders; (4) the present management of the debtor is incompetent to form a fair and equitable plan of arrangement; (5) public investors need a disinterested trustee to protect and enforce their rights and need the other protection afforded by Chapter X; and (6) more than just an arrangement with its unsecured creditors is necessary to revitalize the debtor.

The debtor denies most of these contentions. Supported by the official creditors committee, it argues that, if the proceedings are shifted to Chapter X, the unsecured creditors will recover nothing.

Considering these contentions seriatim, the Court finds:

1. There is need for a detailed investigation into the past activities of debtor's management. Petitioners set out three specific instances of alleged misdoings on the part of management.[1]

With respect to the first of these, the accounting firm responsible for auditing debtor's records also suggests that further investigation is appropriate.[2]

Moreover, the Securities and Exchange Commission has provided the Court with information indicating that, on several occasions, the management was guilty of deliberately issuing false and misleading statements in regard to current and future activities.[3]

The Receiver has brought proceedings against the officers of debtor for allegedly "immoral acts" and a complaint has been filed with the United States Attorney's Office of this District.[4]

The foregoing facts require the conclusion that a thorough and detailed investigation is both appropriate and necessary. See In re Herold Radio & Electronics Corp., 191 F.Supp. 780, 786 (S.D.N.Y.1961).

2. At this point, there is substantial doubt whether the creditors will be able to collect the 15% offered in the arrangement.

The petitioners' allegations that Leisureland has been unable to pay certain debts as they mature have not been specifically denied by debtor.[5] An affidavit submitted by the president of Leisureland broadly asserts that the corporation is fiscally sound. However, the only financial statements submitted to the Court to support this assertion are unaudited and reflect the books and records without outside verification of the assets and liabilities. Adjustments, accruals, appraisals and information are included only to the extent submitted by Leisureland's management.

There appears to be little justification for these obvious deficiencies. The Court finds that Leisureland's financial outlook is not as healthy as debtor might have us believe; and that it is not a profitable or financially sound entity.

3. The arrangement calls for no sacrifice on the part of the shareholders. See General Stores Corp. v. Shlensky, supra, at 466 of 350 U.S., at 519 of 76 S.Ct., 100 L.Ed. 550.

4. The present management of debtor is incompetent to form a fair and equitable plan of arrangement.

5. Public investors need the protection afforded by Chapter X. By the terms of the proposed plan of arrangement, the public debenture holders will suffer a drastic change in their rights. They will be faced with the choice of converting their debentures into stock or accepting 15% of their claims. This choice will have to be made with a paucity of information.

6. Only a reorganization can save debtor. Even if the proposed plan of arrangement were approved, the debtor would need working capital. The contemplation of a merger itself is evidence that more than a simple arrangement with unsecured creditors is necessary.

1. The first of these is fully set out below. See n. 2 infra. The second incident involved a sale by a subsidiary of debtor of all the common stock of a corporation to Vitolo, debtor's president, and the subsequent relinquishment of all claims by debtor against this corporation. The third incident involved the sale of a piece of property to a corporation owned by Vitolo in exchange for a $98,000 reduction of debt owed by BarChris to Vitolo.

2. On October 29, 1962, the day on which the petition under Chapter XI of the Bankruptcy Act was filed, the debtor transferred automotive equipment having a cost of $50,000 to Sanpark Realty Corp., a corporation presumably owned by the debtor, but not in Chapter XI or subject to the jurisdiction of this Court.

3. Affidavit of S.E.C., pp. 15–17.

4. Affidavit of Alex L. Rosen, p. 2.

5. Debtor has answered petitioners' allegations by denying "knowledge or information sufficient to form a belief."

7. The debtor has not provided the Court with any information to support its contention that the creditors will get nothing if a Chapter X proceeding is instituted.

The foregoing findings and conclusions are sufficient to dispose of this case. However, in view of the recent decision in In the Matter of Grayson-Robinson Stores, Inc. v. S. E. C., 320 F.2d 940 (2d Cir. 1963), rehearing denied, the Court adds the following comments.

While the denial of the motion [to dismiss the Chapter XI petition unless the proceedngs are transferred to Chapter X] in Grayson differs from the action taken in Herold and Liberty Baking, the Court of Appeals did not intend to alter the applicable principles of law. It can still be maintained that "[i]n reality, these decisions form an harmonious body of law." In re Herold Radio & Electronics Corp., supra, at 784 of 191 F.Supp.

The facts in the present case most closely resemble those attendant in Liberty Baking and Herold.

In Grayson, the Court found that the institution of Chapter X proceedings would cause "an immediate stoppage of merchandise sales to Grayson on credit, which would cause disaster" (In the Matter of Grayson-Robinson Stores, Inc. v. S. E. C., supra, at 946 of 320 F.2d) and would result in a loss of key employees who had remained with Grayson out of loyalty. No such or similar finding was made in either Herold or Liberty Baking; nor is there any credible evidence to support such a finding in the present case.

Other features of Grayson make it materially distinguishable from the line of cases which have granted motions of the type involved herein. For example, in Grayson, the Court found that no publicly held securities would be readjusted. The petitioners herein are faced with the choice of converting their debentures into stock or accepting 15% of their claims. See S. E. C. v. Liberty Baking Corp., supra, at 514 of 240 F.2d.

In Grayson, the Court pointed out that there had already been a detailed section 21, sub. a investigation, thereby attenuating the practical need for a Chapter X inquiry. This circumstance was adverted to in Grayson as a feature distinguishing it from Liberty Baking. There has been no section 21, sub. a investigation in the case at bar. The facts herein require further and more detailed investigation.

In Grayson, there was no necessity for a reorganization of the capital structure of the corporation. In Herold, a contrary conclusion was reached. In the present case, reorganization may well become necessary.

Analysis of the total record leads to this Court's conclusion that the desiderata and rulings in Liberty Baking and Herold are applicable to the case at bar.

The petition is granted. Settle order on notice, authorizing the filing of a creditors' or debtor's petition.

## SUPPLEMENTAL MEMORANDUM

This supplemental memorandum amends the opinion of the Court filed October 25, 1963 as hereinafter referred to.

The opinion as originally filed stated:
"There has been no section 21, sub. a investigation in the case at bar."

This statement was based upon the assumption that no such examination had been conducted in view of two circumstances: (1) none of the attorneys had alluded to a section 21, sub. a inquiry and (2) the Clerk's Official File in this case does not contain any transcript of section 21, sub. a testimony.

After the Court's opinion was filed, the Court was advised by Alex L. Rosen, attorney for the receiver, that a section 21, sub. a investigation had in fact been conducted. The details of such inquiry are set forth in a letter dated November 4, 1963 addressed to the Court by Mr. Rosen. The other attorneys in the case state that this letter is correct in all material respects.

In view of the foregoing, the original opinion is hereby deemed amended to accord with the facts recited above.

However, the Court adheres to its original decision. While the conduct of a section 21, sub. a investigation is significant, it is not conclusive of the issues that were before the Court upon the proceedings herein. So ordered.