**In re COFFEE CUPBOARD, INC., Debtor.**

**Thomas F. FARLEY, Creditor–Appellant,**

**v.**

**COFFEE CUPBOARD, INC., Debtor–Respondent.**

**No. 89–CV–3788(TCP).**

United States District Court, E.D. New York.

Aug. 9, 1990.

Thomas F. Farley, New York, N.Y., pro se.

Sherman, Citron & Karasik, New York, N.Y., for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

### INTRODUCTION

This is an appeal from an interlocutory order of the United States Bankruptcy Court, Eastern District, New York, entered July 26, 1989 in a Chapter 11 proceeding. The appeal has been brought by Thomas Farley, an unsecured creditor of the debtor, Coffee Cupboard, Inc. Mr. Farley has an allowed unsecured claim against Coffee Cupboard, Inc., in the amount of $2,500, and a half interest in an allowed unsecured claim of $22,000 of a law partnership, Broder & Farley, now dissolved, in which Mr. Farley was a partner with a fifty percent interest.

### BACKGROUND

On March 29, 1989, appearing pro se, as an unsecured creditor of the debtor, Mr. Farley made a motion pursuant to Bankruptcy Code Sections 350(b) and 1112(b) to reopen this Chapter 11 case, to waive the fee therefor in the interest of justice, and to convert the case to one under Chapter 7 of the Code.[1]

This Chapter 11 case was commenced on November 16, 1981 by the filing of a voluntary petition. The debtor continued in the operation of its business. The debtor's plan of reorganization ("the Plan") was confirmed by an order entered July 6, 1984. A final decree was entered on November 9, 1986 (Duberstein, B.J.) reciting that the estate of the debtor had been "fully administered."

The Plan for reorganization provided that each of the debtor's unsecured creditors was to be paid 80% of their allowed claims over four years, in sixteen, equal, quarter-yearly payments, beginning three months after confirmation. The indebtedness to each of the debtor's unsecured creditors was to be evidenced by a promissory note drawn to each unsecured creditor. The funds necessary for the payment to creditors was to be generated from the operations of the debtor's business, and out of funds raised by the parent corporation, Allvend Industries, Inc., by means of a public offering of stock on the open market, thereafter invested in the debtor. Until such time as all payments had been made pursuant to the Plan, the debtor was not to transfer all, or substantially all, of its assets. The Bankruptcy Court was to retain jurisdiction until the debtor's confirmed Plan was fully consummated.

Mr. Farley, in his motion to reopen and convert the case pursuant to Section 1112(b), alleged that the debtor was in material default in the consummation of the Plan, because it had failed to issue the promissory notes to unsecured creditors as required by the Plan, and it had failed to make the installment payments to unsecured creditors. Farley also alleged that

---

1. A similar motion was made by Bernard J. Coven, an unsecured creditor with an allowed claim of $18,000. The Commissioner of Labor of the State of New York, a priority creditor of the debtor, joined in the applications to convert this case.

the debtor was unable to effect substantial consummation of the confirmed Plan because all the debtor's assets were transferred in violation of the Plan, and without leave of the Court, and because the debtor was an inactive, empty shell.

Furthermore, Farley asserted that the debtor, by its president, Edward Weiss, and aided and abetted by his sons, Leonard Weiss and Mitchell Weiss, had concealed assets of the debtor, made false filings with the Bankruptcy Court, and committed perjury throughout debtor's arrangement proceedings. The misconduct during the arrangement proceedings was said to involve debtor's concealment of its ownership of 6,425,000 controlling shares of Coffee Hutch, Inc., a public corporation, family known as P.L.S. Corp. The alleged fraud was said to have been revealed in 1988 in an offering statement made in connection with a Regulation D public offering pursuant to the Securities and Exchange Act of 1934, as amended by Bazaar De La Cuisine Internationale, Inc. ("Bazaar").[2] Farley claimed that Weiss and his sons had changed the name of Coffee Hutch, Inc. to Bazaar in order to conceal their theft of Coffee Cupboard's assets.

The creditor's motions came on before Bankruptcy Judge Conrad B. Duberstein. Judge Ryan signed orders authorizing Bankruptcy Rule 2004 examinations of Leonard Weiss, Mitchell Weiss, Roger Rosenberg, Esq., and the debtor by Edward Weiss.[3] The examinations were scheduled to take place in the law offices of Jerome T. Dorfman, representing creditor Bernard J. Coven, but Mitchell Weiss and Roger Rosenberg failed to appear. Judge

Ryan then ordered the examinations to be held in his courtroom, and presided.

Leonard Weiss testified before Judge Ryan on June 7 and June 13, 1989, and was examined in connection with the alleged concealment and theft of the 6,425,000 shares of debtor stock. He admitted that Roger Rosenberg, his securities counsel, had advised him not to produce any documents on his examinations, and testified to his inability to produce originals of any documents at that time. An adjournment was made to June 27, 1989, in order to allow Leonard Weiss to search for the subpoenaed documents.

On June 27, 1989, Judge Duberstein returned to the bench, and Judge Ryan was no longer sitting. Judge Duberstein held that the creditors could not establish fraud by reason of Section 1144 of the Bankruptcy Code which provides that the Court may only revoke an order of confirmation of a plan because of fraud within 180 days of the entry.[4] The Court held that there would be no further Bankruptcy Rule 2004 examinations. The Court reopened the Chapter 11 case, but held that the sole issue to be determined on the question of conversion of the case was whether the debtor had substantially consummated its Plan of reorganization.[5] The Court stated that the creditor's remedy for debtor's failure to make payment under its Plan was a primary action against the debtor in the State Court. The Court also stated that it would refer the creditor's allegations of concealment of assets, fraud and perjury to the United States Attorney.

2. The public offering statement represented that Leonard and Mitchell Weiss were the holders and owners of 6,425,000 shares of Bazaar (formerly Coffee Hutch, Inc.), with Leonard Weiss as President; that in June 1984, in consideration of a demand promissory note in the principal amount of $64,520 given by them to the debtor, they purchased from the debtor the 6,425,000 shares; that in September 1984, the debtor forgave the indebtedness in consideration for unspecified services given the debtor by Mitchell and Leonard Weiss; and that in May 1988, the 6,425,000 shares were reissued into the names of Leonard Weiss and Mitchell Weiss, in equal amounts.

3. Roger Rosenberg appeared as the attorney for Bazaar with respect to the Regulation D offering

said to reveal Edward, Leonard and Mitchell Weiss' conversion of the 6,425,000 shares of debtor's stocks.

4. Section 1144 of the Bankruptcy Code states: On request of a party in interest at any time before 180 days after the date of the entry of the Order of Confirmation, and after notice and a hearing, the Court may revoke such order if, and only if, such Order was procured by fraud.

5. In his decision (see transcript of June 27, 1989, pp. 9–11), the Bankruptcy Judge seemed to be trying to suggest what he considered to be an equally effective, but easier claim for the creditors to pursue, than the claim Farley ("Creditor") has chosen here.

From this decision, Mr. Farley ("Creditor") appeals, asserting that Bankruptcy Code Section 1112(b) provides that a Court may convert a Chapter 11 case to one under Chapter 7 for "cause," including, but not limited to, the grounds enumerated within that Section,[6] and not excluding a showing of a debtor's fraud and concealment of assets during Chapter 11 arrangement proceedings. He further asserts that a showing of fraud for the purposes of converting the case is not time barred by the 180 day limitation in Section 1144, because this time limit applies only to revocation of an order of confirmation. However, creditor here seeks only to have the case converted to a Chapter 7 case, and not to have the confirmed Plan revoked. Thus, creditor seeks to have a showing of fraud allowed as "cause" for conversion pursuant to Bankruptcy Code Section 1112(b).

Coffee Cupboard, Inc. ("Debtor"), however, asserts that Bankruptcy Code Section 1144 "occupies the field" on the question of the admissibility of evidence of fraud as grounds for conversion or dismissal of a Chapter 11 case. Debtor states that in drafting Bankruptcy Code Section 1112(b), Congress confined the "fraud" issue solely to Bankruptcy Code Section 1144, and incorporated that Section's 180 day time limitation.

## DISCUSSION

Since the Bankruptcy Court in this case treated the issue of fraud, as cause for conversion under Section 1112(b), as time-barred by law by Section 1144, the Bankruptcy Court's decision rests on a question of law, and the appropriate standard of review on appeal is de novo. *In re Emmer Bros. Co.*, 52 B.R. 385 (D.Minnesota, 4th Div.1985). Under the de novo standard, the Court "must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge." *Id.* at 390.

■ Code Section 1112(b) provides for the conversion or dismissal of a Chapter 11 proceeding, whichever is in the best interests of the creditors and the estate, if cause is established. "Cause" is enumerated in nine non-exclusive categories, and may also be established by the filing and maintaining of a Chapter 11 case without good faith. *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808 (Bankr.N.D.N.Y.1989), citing *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 985 (Bankr.N.D.N.Y.1988). The non-exclusivity of the grounds enumerated in Section 1112(b) was made clear in the legislative history which states, "The list [contained in Section 1112(b)] is not exhaustive. The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." House Report No. 95–595, 95th Cong., 1st Sess. 405–06 (1977) *reprinted in* [1978] U.S.Code Cong. and Admin.News, pp. 5787, 5963, 6362, cited in *In re Larmar Estates, Inc.*, 6 B.R. 933 (Bankr.E.D.N.Y.1980).

■ The lack of good faith in maintaining the case must rest on the totality of the circumstances, and involves finding an in-

---

**6.** Section 1112(b) of the Bankruptcy Code provides that:

(b) Except as provided in Subsection (c) of this Section, on request of a party in interest, and after notice and a hearing, the Court may convert a case under this Chapter to a case under Chapter VII of this title, or may dismiss a case under this Chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under Section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan on a modification of a plan;

(6) revocation of an order of confirmation under Section 1144 of this title, and denial of confirmation of another plan or a modified plan under Section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; and

(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

**18**

tent to abuse the judicial process, and the purpose of the reorganization process. *In re Garsal Realty, Inc.*, 98 B.R. 140, 150–52 (Bankr.N.D.N.Y.1989), cited in *In re Sal Caruso Cheese, Inc.*, *supra* 107 B.R. at 816. Thus, good faith is "merged into the power of the court to protect its jurisdictional integrity from schemes of improper petitioners seeking to circumvent jurisdictional purposes absent any economic reality." *In re Eden Associates*, 13 B.R. 578 (Bankr.S.D.N.Y.1981).

■ The Bankruptcy Court has wide discretion to determine if cause exists, and how to ultimately dispose of the case. *In re Sal Caruso Cheese, Inc.*, *supra* 107 B.R. at 817, citing S.Rep. 989, 95th Cong., 2d Sess. 117–18, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5903–04; H.R. Rep. No. 595, 95th Cong. 1st Sess. 405–06, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6361–62. However, this discretion should be "legal discretion, rather than one merely at will," or one that only expresses the court's own notion of equitable principles." Discretion which is premised on the wrong criteria, or that disregards well settled principles is said to transcend "the allowable bounds" and is reversible. *See S.E.C. v. United States Realty and Improvement Co.*, 310 U.S. 434, 457, 60 S.Ct. 1044, 1054, 84 L.Ed. 1293 (1940); *In re Barchris Const. Co.*, 223 F.Supp. 229 (S.D.N.Y.1963); *In re International Airport Inn Partnership*, 517 F.2d 510 (9th Cir.1975), cited in 5 Colliers, ¶ 1112.02, 15th ed.

■ In the present case, creditor seeks to introduce evidence of debtor's fraud as cause for conversion. However, the Bankruptcy Judge refused to conduct any further examinations or hearings on the subject of debtor's alleged fraud during the arrangement proceedings, even though proof of bad faith has consistently been accepted as a basis for conversion or dismissal of Chapter 11 cases. This would appear to be reversible error. The Bankruptcy Court also limited all future inquiries to the sole issue of whether or not there had been substantial confirmation of the Plan. This denied the creditor the opportunity to show other, well recognized grounds for conversion, and also appears to have been erroneous.

■ Moreover, the Bankruptcy Court treated the 180 day limitation on showing fraud in Section 1144 as applying equally to a showing of fraud as cause for conversion under Section 1112(b). However, this is not a sound interpretation of the latter section's incorporation of Section 1144. Since proof of bad faith is well accepted as "cause" for conversion, then evidence of fraud in filing or maintaining a Chapter XI case must also be admissible as proof of bad faith, and as the subject of a hearing on the merits, under Section 1112(b). *See In re Victory Const. Co.*, 9 B.R. 549 (Bankr.C.D.Ca.1981). *See also, In re Johns–Manville Corp.*, 36 B.R. 727 (Bankr. S.D.N.Y.1984) (where the creditor had to show fraud as proof of bad faith in filing, in order to dismiss a Chapter 11 case).

■ While the term "fraud" has never been defined by Congress "for fear that the craft of men should find ways of committing fraud which might evade such a definition," *In re Kostoglou*, 73 B.R. 596 (Bankr.N.D.Ohio 1987), there can never be a showing of fraud without proof of bad faith. Black's Law Dictionary, Rev. 5th Ed., cited in *Kostoglou, supra*, defines the term as including any "deceit, artifice, trick or design used to cheat another—something said or done or omitted with the design of perpetrating a cheat or deception." *Id.* Fraud, thus, requires proof of bad faith, immorality, or intentional wrongdoing. *Id.* Therefore, creditor should have been allowed to pursue and present the issue of fraud as cause for conversion.[7]

However, even if fraud could not be shown as proof of bad faith, or as "cause" for conversion, a showing of fraud would still not be time-barred by Section 1144's incorporation into Section 1112(b). Section

7. The initial burden of proof for conversion or dismissal lies with the moving party. However, once the debtor's good faith has been put into question, the debtor bears the burden of proving good faith. *In re Copy Crafters Quickprint, Inc.*, *supra* 92 B.R. at 985.

1114 provides that a motion to set aside a confirmation order must be based upon a claim that the order was procured through fraud, and such a motion must be made within 180 days of the entry of the order. The 180 day time limit in Section 1144 has been strictly enforced by the courts, *see e.g., Matter of Newport Harbor Assoc.*, 589 F.2d 20 (1st Cir.1978), even to the extent of enforcing it in those cases where the alleged fraud of the debtor is not discovered until after the limitations period. *See Matter of Medical Analytics, Inc.*, 410 F.Supp. 922 (S.D.N.Y.1975), *affirmed* 532 F.2d 879 (2d Cir.1986) (per curiam).

However, creditor here asserts that he is not attempting to enlarge the time period prescribed in Section 1144. Rather, he contends that the Bankruptcy Court mischaracterized the nature of his complaint in treating it as an attempt to revoke the order confirming debtor's plan of reorganization. Creditor points out that he merely wishes to have the case converted to a Chapter 7 case, and not to collaterally attack the final order confirming the reorganization Plan.

■ While it is true that creditors may not attack confirmation orders by simply characterizing their attempt as an independent cause of action, rather than a motion to revoke the order, *see In re Emmer Bros. Co., supra* 52 B.R. at 391, citing *In re Garsal Realty, supra*, the 180 day deadline in Section 1144 does not act as a bar to truly independent courses of action based on a debtor's wrongful conduct. In *Matter of Newport Harbor Assoc., supra* 589 F.2d at 24, the First Circuit dismissed a motion to revoke confirmation on the grounds that it was not filed within the 180 days period, but made the following comments:

> Our opinion should not be read to suggest that the debtors or other creditors who may have been injured by fraud are necessarily without other remedies in other forums ... It would appear that the doctrines of res judicata and collateral estoppel would not bar such an action, at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factu-

al claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement.

Where a claim does not involve an attempt to "redivide the pie" by a disgruntled participant in the Plan, but rather involves a dispute about an additional asset that did not figure into the reorganization Plan, an adjudication of the dispute would not upset the confirmed Plan, and the 180 day time limitation of Section 1144 is not a bar. *See In re Emmer Bros. Co., supra* 52 B.R. at 392.

An application of the "test set forth in *Matter of Newport Harbor Associates* strongly suggests that a showing of fraud in the present case, is not time-barred by Section 1112(b)'s reference to Section 1144. As debtor never produced the subpoenaed documents, and as a full hearing was never conducted on the issue of fraud, the underlying factual claims were never actually adjudicated.

■ As to the most important requirement, that the conversion not upset the confirmed Plan of reorganization, it is important to note that while the primary purpose of Chapter 11 is reorganization, liquidation is not prohibited. *See In re Copy Crafters Quickprint, supra* 92 B.R. at 985. ("Reorganization encompasses rehabilitation and may include liquidation.") Thus, so long as conversion to Chapter 7 can be carried out without upsetting the confirmed Plan of reorganization, the action is independent, and not merely a collateral attack upon the order of confirmation.

Here, debtor's Plan provides that the creditors be repaid in incremental payments, out of funds generated from the operation of the business, and from funds that the parent corporation, Allvend Industries, Inc., may raise in the equity market by means of a public offering of stock on the open market, and may thereafter invest in the debtor. Thus, it seems clear that if the business is liquidated in accordance with Chapter 7, it cannot continue to be run as the Plan suggests.

However, since reorganization is not the same as rehabilitation, *see In re Emmer*

*Bros., supra,* liquidation is not completely irreconcilable with the Plan. Repayment could still be carried out in accordance with the Plan, and the parent corporation could still invest in the debtor's business any proceeds generated by its stock on the open market. Moreover, conversion to Chapter 7 would affect neither positively, nor negatively what the creditors would ultimately receive under the debtor's plan, nor would it give them anything different from a Chapter 11 liquidation today. *See In re Silverstein,* 94 B.R. 284 (E.D.N.Y.1988).

Thus, as in *In re Emmer Bros. Co., supra,* this is not merely an attempt by a disgruntled participant in the Plan to "redivide the pie." Therefore, an examination of the likelihood of debtor's fraud during the arrangement proceedings, when presented only for the purpose of showing cause as required by Section 1112(b), is not merely a collateral attack upon the confirmed Plan, and thus, is not time-barred by Section 1144.[8] An examination of the issue of fraud ought to have been allowed in the Bankruptcy Court.

CONCLUSION

For the reasons discussed above, the issue of fraud should have been considered and examined as cause for conversion under Section 1112(b), and this case should be remanded to the Bankruptcy Court for further proceedings consistent with this memorandum.

---

**8.** It is interesting to note here that a trustee may similarly be appointed for "cause" in a Chapter 11 case at the request of a party in interest. "Cause" in the *Concord Coal Constr.,* HB.R. 552 (S.D.W.Va.1981). Thus, it would seem only logical and consistent that a creditor allowed to show fraud as cause for appointment of a trustee, in a Chapter 11 case, without regard to Section 1144's time limit, be similarly allowed to show fraud as cause for conversion under Section 1112(b), especially where this conversion would not disturb a confirmed Plan.